# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

BRIAN K. MOSS,

       Plaintiff,

v.                                                CV 10-0890 MV/WPL

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

In May of 2007, Brian K. Moss protectively filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Administrative Record ("AR") 118-28.) The applications were denied at the initial and reconsideration levels, and Moss requested a hearing before an administrative law judge ("ALJ"). (AR 57-63, 68-73, 76.) The ALJ denied the application in a decision upheld by the Appeals Council. (AR 1-8.) Thus, the ALJ's decision became the final decision of the Commissioner of Social Security. The case is before me now on Moss' Motion to Reverse or Remand and Memorandum in Support (Docs. 16 & 17), the Response filed by the Commissioner (Doc. 18), and Moss' Reply[1] (Doc. 19). After having read and carefully considered the entire record, I find that the Commissioner's decision is supported by substantial evidence and recommend that the motion be denied.

---

[1] I note that Moss' counsel, Michael Armstrong, failed to comply with the requirements of this District in drafting his Reply. Specifically, reply briefs are limited to twelve double-spaced pages. D.N.M.LR-Civ. 7.5. It is clear from a mere glance at the brief that the spacing is less than double. Such efforts to skirt the rules of this Court by Mr. Armstrong will not be tolerated in briefs filed after the date of this Proposed Findings and Recommended Disposition.

## STANDARD OF REVIEW

In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Id.* I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *See id.*

## SEQUENTIAL EVALUATION PROCESS

The Social Security Administration ("SSA") has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520, 416.920. At the first four steps, the claimant must show that she is not working in substantial gainful activity, that she has an impairment that is severe enough to significantly limit her ability to do basic work activities, and either that the impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or that she is unable to perform the work she has done in the past. At the fifth step, the Commissioner must show that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## FACTUAL BACKGROUND

Moss filed applications for SSI and DIB on May 7, 2007, alleging a disability onset date of October 18, 2006. (AR 118-28.) The SSA denied his applications at both the initial and reconsideration levels (AR 57-63, 68-73), and, on June 6, 2008, Moss filed a request for a hearing

before an ALJ (AR 76). On September 2, 2009, ALJ William B. Howard held a hearing on Moss'

applications for benefits. (AR 22-51.) Moss and a vocational expert ("VE") testified at the hearing,

and Moss was represented by counsel. (AR 9, 22-51.) The ALJ denied his claim for benefits on

November 19, 2009 (AR 9-17), and the Appeals Counsel denied his subsequent request for review

on July 28, 2010 (AR 1-5).

In his applications, Moss claimed that he was disabled due to back and spine problems that

cause pain and lifting restrictions. (AR 118, 126, 142, 146.) In his appeal from the initial denial,

Moss specified that his injuries include two herniated discs in the lower spine, post-traumatic stress

disorder ("PTSD"), anxiety, depression, and chronic back pain. (AR 167.) These injuries stemmed

from a tragic motor vehicle accident that occurred on October 18, 2006.[2] (AR 27, 232.) On that date,

Moss was following a friend in a separate vehicle. (AR 232.) As the vehicles came around a curve,

a semi-truck driving in the opposite direction crossed into their lane of traffic, hitting the vehicle

driven by Moss' friend head-on and killing him instantly. (AR 27, 232.) The semi-truck continued

into Moss' vehicle, and Moss swerved but was hit as well. (AR 232.) Moss was able to get out of

his vehicle and go to check on his friend, finding that he had died on impact. (*Id.*)

Following the accident, Moss received regular physical and psychological treatment. Based

on the records available, Moss received treatment from one psychiatrist and two groups of doctors

from 2007-2009. Drs. Brian Delahoussaye, M.D., and William R. Prickett, M.D., with Rehabilitation

and Occupational Medicine treated Moss from October 26, 2006 through the summer of 2007. (AR

300.) While Moss' original complaints were psychological in nature, he began to describe increasing

pain in his back approximately six weeks after the accident. (AR 227, 230, 232.) They diagnosed

---

[2] The ALJ states that this accident occurred on October 16, 2006, and Moss concurred with this date
during the hearing. However, the majority of the records and Moss' applications indicate that the accident
took place on October 18, 2006, so that is the date used here.

thoracic strain, lumbar strain, lumbar disc herniation at L4-5 and L5-S1, PTSD, and left sciatica. (AR 223-24.) Moss' treatment included medications such as Naprosyn, Robaxin, Vicodin and hydrocodone as well as physical therapy and exercise. (AR 218, 219, 233.) They offered and prescribed more intensive treatment options including epidural injections and surgery, but Moss refused them due to a fear of needles. (AR 218, 219, 242.) On several occasions, Moss reported decreased pain with the medications and physical therapy. (AR 238-41, 242, 282-83, 285-94.) In January of 2007, Dr. Delahoussaye noted that, because of the psychological impact on Moss, "his recovery may be a bit protracted and this would be normal given the combination of emotional upset and physical difficulties." (AR 224.) Moss had one MRI during this time, on December 12, 2006, which showed multilevel lower lumbar spondylosis, a small, broad herniation in the disc at L4-5 and a small central herniation of the disc at L5-S1. (AR 234.)

Dr. Thomas C. Thompson, Ph.D., treated Moss from November 7, 2006 through late 2007 or early 2008. (AR 203-06, 244-49, 345.) Though it does not appear that Dr. Thompson ran any tests, he treated Moss for mild decreased energy, moderate depressed mood, moderate anxiety, and moderate PTSD symptomology. (AR 205.) He prescribed Zoloft, Wellbutrin, and Klonopin. (AR 206.) At the initial appointment, Dr. Thompson stated that Moss' prognosis was "quite good as he had not had previous problems" and anticipated that he could be discharged as soon as he was symptom free for twelve months. (*Id.*)

Dr. Edwin L. Kennedy, M.D., treated Moss from August of 2007 through at least August of 2009. (AR 300, 401-03.) He diagnosed Moss with two herniated discs in the lumbar spine, right radicular symptoms, left lateral epicondylitis and PTSD (AR 301) and later amended the diagnosis to cervical dorsal lumbar spondylosis that is worst in the lumbar spine, left shoulder impingement and PTSD. (AR 402). Moss reported more severe pain during his treatment with Dr. Kennedy. (*See*

AR 303-08, 311-13.) Dr. Kennedy treated Moss with medications including oxycodone, hydrocodone, baclofen, Valium, and hydroxyzine and physical therapy. (AR 309, 312, 314-15, 402.) Dr. Kennedy noted in October of 2007 that Moss' PTSD and fear of needles had arrested any physical improvement. (AR 325.) He made referrals for a surgical consultation on multiple occasions (AR 343, 346, 350), but there is no record from a surgeon regarding a consultation or a surgery. He also referred Moss for additional MRI testing of the shoulder in January of 2008 (AR 346), but the records from the MRI were not included in the Administrative Record.

Moss' treating physicians did make work recommendations during his treatment. Dr. Prickett completed a return to work recommendation form on December 18, 2006. (AR 296.) The form explained the exertional levels as described by the SSA, with check boxes by each SSA exertional level. (*Id.*) On the form, Dr. Prickett limited Moss to light work and occasional bending at the waist and squatting/kneeling. (*Id.*) Later, on August 2, 2007, Dr. Prickett completed another return to work recommendation form, this time checking the box for "He/she is totally incapacitated at this time" and writing next to that "Disabled." (AR 295.) Dr. Prickett wrote that the diagnoses were two herniated disc protrusions, PTSD/anxiety depression, and chronic back pain. (*Id.*) Dr. Kennedy noted at the majority of Moss' visits that he was unable to work. (*See, e.g.*, AR 310, 343, 346.) In Moss' most recent medical record, from August 7, 2009, his treating physician Dr. Kennedy noted that Moss is applying for disability, and then, under restrictions, wrote "Sedentary." (AR 402.)

Moss was also seen by two consulting physicians on behalf of the SSA. The psychiatric examiner, Dr. JLeRoy Gabaldon, Ph.D., concluded that Moss has a nonsevere impairment of anxiety-related disorders that coexists with a nonmental impairment. (AR 250.) The anxiety disorder was evidenced by recurrent and intrusive recollections of a trauma that causes distress. (AR 255.) Dr. Gabaldon concluded that it mildly restricts Moss' daily activities, social functioning, and

concentration, pace and persistence, but that Moss experiences no episodes of decompensation. (AR 260.) He stated that Moss was never hospitalized for psychiatric reasons, nor does he report severe functional limitation. (AR 262.)

The physical examination by medical consultant Edward S. Bocian, M.D., concluded that Moss could perform work at the light exertional level despite diagnoses of lumbar sprain/strain, intermittent sciatica, mild degenerative joint disease and two herniated discs. (AR 265.) Dr. Bocian had the impression that conservative therapies including physical therapy were demonstrating improvements in Moss' condition. (AR 266.) He found that the limitations described by Moss were psychologically imposed and that Moss' exam and imaging findings are consistent with the light exertion residual functional capacity ("RFC"). (AR 266.) He did additionally limit Moss to occasional stooping and crouching because of his lower back pain. (AR 266.) He did not limit Moss' ability to reach. (AR 267.)

Moss has claimed to be significantly limited in his function due to his injuries. He stated in his function report, completed on May 22, 2007, that he needs help putting on socks and shoes, runs small errands with his son carrying bags into and out of stores, goes to his doctors appointments, drives but usually has his son along, and bathes though stretching to wash his back and legs is difficult. (AR 155-57.) He claimed that he was unable to prepare meals or do house or yard work due to back pain. (AR 157-58.) He identified that his abilities to lift, squat, bend, stand, reach, walk, sit, kneel, complete tasks, concentrate, use hands and get along with others have been affected by his injuries. (AR 160.) He reported that he can walk for fifteen minutes and then his back hurts but that he can resume walking as soon as he takes pain medication and the pain subsides. (*Id.*)

During the hearing, Moss reported that he cannot lift his left shoulder above his head or lift anything with it, that he cannot stand on his left knee for long periods of time and that he cannot sit

still for long due to his back pain. (AR 28.) He said that he takes medication to deal with the pain

and does little during the day aside from going to appointments and doing walking therapy. (AR 29.)

However, he stated that he cannot walk for long because he gets dizzy and wants to pass out, (*id.*),

and he went on to describe only being able to walk for a half a block before the pain is too great (AR

36). He claimed to lie down several times during the day for hours at a time. (AR 30.) Moss stated

that he cannot bend and is not supposed to lift more than three pounds. (AR 37.) He also said that

he tries not to reach with either hand or arm because it pulls on his back and because his left

shoulder hurts. (AR 37.) He claimed to feel unsafe driving after taking the medication, though that

was not an instruction from the doctor. (AR 29-30.) In terms of daily activities, Moss helps clean

the dishes, does light loads of laundry and folds the clothes, grocery shops with assistance, and

sometimes dusts. (AR 39.) He does not vacuum, mop, sweep, take out the trash, or do yard work.

(AR 39-40.) During the day, he sits or lies around "in a daze," watches TV, or goes and sits outside.

(AR 40.) Moss reported not really considering surgery because it is not certain that he will get better

and because there is a chance it could make things worse. (AR 32.)

## ALJ AND APPEALS COUNCIL DECISIONS

In this case, the ALJ concluded at step five that Moss has not been under a disability since

October 18, 2006. (AR 11.) The ALJ found that Moss has not engaged in substantial gainful activity

since the alleged onset date. (AR 11.) He further found that Moss is severely impaired by obesity,

disorders of the back, and left shoulder pain. (AR 11.) To find those impairments, the ALJ described

the accident and subsequent test results and treatment, the effects of medication in treating his

PTSD, his complaints of pain, and his described daily activities. (AR 11-12.) At step three, the ALJ

found that the impairments do not meet the listed impairments. (AR 13.)

Prior to proceeding to step four, the ALJ found that Moss had the RFC to perform light work

with the additional restrictions that he should only occasionally be required to do overhead reaching and that he should not have to work at unprotected heights or around dangerous, moving machinery. (AR 13.) To make this determination, the ALJ stated that he considered all symptoms to the extent they comport with the objective medical evidence and opinion evidence. (AR 13.) The ALJ then assessed Moss' credibility. (AR 14.) He described the restrictions to which Moss testified at the hearing, which were much more significant than those found by the ALJ. (AR 14.) The ALJ concluded that Moss may experience the alleged symptoms but not to the degree alleged and that his "testimony is an overstatement of his subjective symptoms and limitations are not supported by the objective medical evidence." (AR 14.) He explained his rationale for that assessment. (AR 14-15.)

After his conclusions regarding Moss' RFC, the ALJ found that Moss could not perform his past relevant work, which was at a medium, skilled level. (AR 15.) He considered that Moss was thirty-five years old when he applied for benefits, that he had obtained a high school education but did not graduate or obtain a GED, and that his past relevant work was as a mechanic. (*Id. See also* AR 26-27, 146-47.) He concluded that there were at least three jobs existing in significant numbers in the national economy that Moss could perform even with his limitations based on the testimony of the VE. (AR 16.) Accordingly, he denied benefits.

The Appeals Council declined Moss' request for review, finding no reason to review the ALJ's decision. (AR 1.) Accordingly, the ALJ's decision became the final decision of the Commissioner. (*Id.*)

## ANALYSIS

Moss alleges that the Commissioner's decision was flawed in two respects. First, he alleges that the ALJ's credibility assessment is "contrary to substantial evidence and merely a conclusion

in the guise of findings . . . ." (Doc. 17 at 1 (emphasis and capitalization omitted).) Second, he asserts that the ALJ erred in failing to re-contact Moss' treating physician before deciding to not afford his opinion controlling weight. (*Id.*)

Though his brief is very clear that he is pursuing only these two arguments, Moss raises additional allegations of error in two footnotes included solely in his reply brief. Specifically, he alleges that the ALJ failed to adequately develop his alleged mental impairment (Doc. 19 at 1 n.2) and his severe impairment of obesity (*id.* at 2 n.3). These allegations, presented merely in footnotes with little support and no opportunity for the Commissioner to respond, do not suffice to raise an argument before the Court. *Zimmerman v. Puccio*, 613 F.3d 60, 73 (1st Cir. 2010) (citing *Waste Mgmt. Holdings, Inc., v. Mowbray*, 208 F.3d 288, 299 (1st Cir. 2000)); *Concourse Rehabilitation & Nursing Center, Inc. v. DeBuono*, 179 F.3d 38, 47 (2d Cir. 1999) (citing *United States v. Barnes*, 158 F.3d 662, 673 (2d Cir. 1998)). Thus, I find that these allegations of error need not be addressed.

## A.    Credibility Determination

The first issue that Moss raises regarding the ALJ's decision is that his credibility assessment was contrary to substantial evidence and not supported by findings. (Doc. 17 at 5-10.) In the opinion, the ALJ acknowledged that he must make a credibility assessment and did so. (AR 14.) He described Moss' alleged restrictions and concluded that his testimony was an exaggeration of the symptoms that he actually experiences. (AR 14.) To reach this conclusion, the ALJ relied on the following: (1) treatment records from January 31, 2007 that reported full range of motion in the upper and lower extremities; (2) treatment records from May 1, 2007 that reported no lower extremity atrophy and normal gait and stance; (3) the absence of any testimony or evidence that Moss takes an inordinate amount of pain medication; (4) the fact that Moss has not sought emergency room or hospital care; (5) Moss' refusal to undergo epidural steroid injections, which were prescribed; and (6) the absence

of any aggressive form of therapy like surgery or treatment at a pain clinic. (AR 14-15.)

The ALJ also described some evidence contrary to his opinion and his reasons for discounting it. He stated that Moss' described daily activities were fairly limited. (AR 14.) However, he discounted this as evidence supporting a finding of disability because daily activities cannot be objectively verified and the limitation in daily activities may be due to factors other than medical conditions. (AR 14-15.) He also considered and discounted return to work recommendations made by Moss' treating physician, which will be discussed in the subsequent section. *See infra*, pp. 14-18.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). So long as the record contains substantial evidence to support the ALJ's determination, it will not be reversed. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) (upholding the ALJ's credibility determination though he did not mention a claimant's testimony about side effects of her medications). Due to this principle, a court may not displace the ALJ's decision simply because an alternative conclusion could be drawn from the evidence or even because the court would have made a different decision were the matter before it *de novo*. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). However, the ALJ must give "specific reasons" for his findings, *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (citations and quotations omitted), that are "closely and affirmatively linked to substantial evidence." *Qualls v. Astrue*, No. 10–6288, 2011 WL 2600546, at *3 (10th Cir. July 1, 2011) (unpublished) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). Such findings enable the court to meaningfully review the evidence considered by the ALJ in judging a claimant's credibility. *Hardman*, 362 F.3d at 679 (citing *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001)).

Credibility determinations are often required when the claimant is asserting a disability based at least in part on pain. The ALJ must follow three steps in analyzing a claimant's evidence of pain. First, he must determine whether the claimant established a pain-producing impairment with objective medical evidence. *Branum v. Barnhart*, 385 F.3d 1268, 1273 (10th Cir. 2004) (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993)). Next, he must consider whether a loose nexus between the impairment and the subjective allegations of pain exists. *Id.* Finally, he must evaluate whether, based on all of the evidence, the pain is actually disabling. *Id.* This third step requires a credibility assessment, and to determine the credibility of the claimant's testimony regarding pain, the ALJ should consider factors like:

> [T]he levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Thompson*, 987 F.2d at 1489 (quoting *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991)).

Though Moss alleges otherwise, it is clear that the ALJ followed the three-step process as required, finding that Moss had a pain-producing impairment and that there was a loose nexus between the impairment and Moss' allegations. The ALJ found Moss' credibility lacking when he came to the third step, or whether the pain was in fact disabling. To make that determination, the ALJ did consider and weigh some of the evidence, including Moss' treatment records, medications, hospitalizations, treatment, failure to follow prescribed treatment, and daily activities.

Moss alleges that the ALJ was in error to consider his failure to follow prescribed treatment in discounting his credibility. Where an individual is prescribed certain treatment and does not follow that treatment, that fact may be considered in the credibility assessment if there are no good

reasons for the failure. 20 C.F.R. §§ 404.1530(b), 416.930(b); SSR 96-7p, 1996 WL 374186, at *7.

In this case, Dr. Delahoussaye prescribed epidural injections on January 31, 2007 and scheduled

Moss for his first injection in early February. (AR 224.) That appointment was cancelled. (AR 212.)

Dr. Delahoussaye continued to recommend injections and even surgery, but noted that Moss was

"basically unwilling to proceed with either of these two recommendations." (AR 242.) Later in the

course of his treatment, on January 22, 2008, Moss was referred for an orthopedic surgery

evaluation, of which there is no record.[3] (*See* AR 350.)

Moss cites his fear of needles, which is mentioned in the record, as the reason for failing to

follow through with the prescribed and recommended injections. At least four district courts have

considered whether fear of needles is a good reason to decline prescribed and recommended

treatment and have concluded that it is not. *Galford v. Astrue*, No. 5:09CV102, 2010 WL 5441634,

at *19-20 (N.D.W. Va. Dec. 8, 2010); *Nissen v. Astrue*, No. C07-4056-MWB, 131 Soc. Sec. Rep.

Serv. 1030, 2008 WL 2397680, at *1 (N.D. Iowa June 9, 2008); *Colgrove v. Astrue*, No.

2:07-CV-126, 2008 WL 974838, at *5 (E.D. Tenn. Apr. 9, 2008); *Castle v. Astrue*, No.

2:07-CV-020, 125 Soc. Sec. Rep. Serv. 279, 2008 WL 56291, at *8 (E.D. Tenn. Jan. 3, 2008). None

of the "good reason[s]" listed in the regulations are remotely akin to a fear of needles; all relate to

an inability to obtain the treatment or to a choice to decline the treatment because it either would not

likely work or would require an enormous hardship or risk, like an amputation or the possible loss

---

[3] Moss makes much of Dr. Kennedy's statement in a handwritten note to his attorney, which states, in the complete and unedited version:

> Needs ortho surgery eval
> (1) Left shoulder impingement
> (2) HNP lumbar spine
> My opinion surgeries are a medical need depending on symptoms – pain may be reduced by
> surgeries, doubt a surgery will reduce pain to point where Mr. Moss will return to work.

(AR 352.) Notably, though, there is no evaluation from a surgeon describing whether Moss is a candidate for surgery or the type of relief that could be expected.

of vision. 20 C.F.R. §§ 404.1530(c), 416.930(c). Like the other courts to consider the issue, I find that Moss' claimed fear of needles does not constitute a good reason preventing him from proceeding with the prescribed injections and that his failure to receive the injections can be construed as conduct inconsistent with the extreme limitations alleged.

There was one error in the ALJ's credibility assessment. The ALJ discredited Moss' admittedly limited daily activities on invalid bases. Daily activities do not require objective verification. *Swanson v. Barnhart*, 190 F. App'x 655, 657 (10th Cir. 2006) (unpublished). If that were a reason to discount reported daily activities, such reports would be discounted for all social security claimants. The SSA clearly intended for ALJs to consider the daily activities of claimants, as it is the first factor relevant to symptoms listed in the guidance provided by 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c). Thus, an ALJ may not discount reports of daily activities simply because they cannot be objectively verified. The second basis offered, that "it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons," (AR 15) is also problematic. The ALJ fails to explain what he means by "other reasons," and that lack of specificity precludes effective review. *See Swanson*, 190 F. App'x at 657-58 (remanding a case on the basis that the ALJ applied incorrect legal standards in finding the plaintiff not credible in part because alleged limited daily activities could not be objectively verified and could be limited due to "other factors").

Despite this error, the ALJ's credibility assessment was supported by substantial evidence. Certainly, there are factors that the ALJ could have considered but did not. Specifically, he did not discuss the consistency of Moss' statements and his medical treatment history.[4] Consistency can be

---

[4] The ALJ did mention what the claimant reported to the doctor, which was consistent, and his treatment records at another point in his decision, so the ALJ was clearly aware of the records and considered them in his overall analysis. (*See* AR 12.)

a "strong indication of the credibility of an individual's statements . . ." and a longitudinal medical record "can be extremely valuable in the adjudicator's evaluation of an individual's statements about pain . . . ." SSR 96-7p, 1996 WL 374186, at *5, *6. However, the ALJ is not required to conduct "a formalistic factor-by-factor recitation of the evidence." *Qualls*, 2011 WL 2600546, at *3 (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). Furthermore, the value of his consistent reports of pain and regular medical contacts to determine his credibility are somewhat undermined by a factor given much weight by the ALJ, namely that Moss chose note to pursue more aggressive and prescribed treatment.

The ALJ here gave several reasons for his credibility assessment that are supported in the record. He also explained his reasons for discounting aspects of the record that would otherwise support Moss' credibility. While the ALJ's rationale for discounting Moss' accounts of his daily activities was impermissible, his decision remains supported by substantial evidence. Though Moss cites to evidence that could be construed as supporting his credibility, he has not undermined the substantial evidence that supports the ALJ's decision. Because the inquiry is not what I would determine were I evaluating Moss' credibility *de novo* but rather whether the ALJ's assessment is supported by substantial evidence, I find that there was no error in the ALJ's credibility assessment.

## B.      Clarification from Treating Physician

Moss next argues that the ALJ failed to re-contact Dr. Prickett, one of Moss' treating physicians, whose statements he claims were supported by Dr. Kennedy, another treating physician, in violation of his duty to develop the record. (Doc. 17 at 10-14.) The only aspect of the medical records that the ALJ apparently rejected and with which Moss takes issue is Dr. Prickett's return to work recommendation from August 2, 2007. (*See* AR 15, 295.) On that form, Dr. Prickett identified Moss' diagnoses and stated that he could not return to work because he is "[d]isabled." (AR 295.)

14

The ALJ explained his rationale for not crediting the recommendation:

> The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. Although the doctor stated that the claimant is 'disabled,' it is not clear that the doctor was familiar with the definition of 'disability' contained in the Social Security Act and regulations. Specifically, it is possible that the doctor was referring solely to an inability to perform the claimant's past work, which is consistent with the conclusions reached in this decision.

(AR 15.)

The issue raised by Moss, that the ALJ erred in failing to re-contact his treating physician, arises jointly from the ALJ's duty to develop the record and from the significance that the SSA assigns to the medical opinions of treating physicians. Because a social security disability hearing is a nonadversarial proceeding, the ALJ is responsible for ensuring "that an adequate record is developed during the disability hearing consistent with the issues raised." *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (quoting *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993)). The ALJ's duty to develop an adequate factual record is heightened where the claimant appears before the ALJ without the assistance of counsel. *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (citations omitted). A violation of the duty to develop the record is legal error requiring remand. *Id.* at 791-92.

In general, the SSA gives "controlling" weight to a treating physician's opinion concerning the nature and severity of a claimant's medical condition if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). *See also White v. Barnhart*, 287 F.3d 903, 907 (10th Cir. 2001) (The ALJ must give "controlling weight" to the treating physician's opinion, provided that opinion "is well-supported . . . and is not

15

inconsistent with other substantial evidence."). However, conclusory opinions, such as those stating that the patient is "disabled" or "unable to work", are specifically discounted by the Social Security Administration. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

Based on those two principles, the Commissioner must re-contact a treating physician when the information from the physician is "inadequate . . . to determine whether you [the claimant] are disabled." 20 C.F.R. §§ 404.1512(e), 416.912(e). But "it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receive[s] from [the claimant's] treating physician' that triggers the duty." *White*, 287 F.3d at 908 (quoting 20 C.F.R. § 416.912(e)). *See also Anderson v. Astrue*, 319 F. App'x 712, 728 (10th Cir. 2009) (unpublished) (citing *White*, 287 F.3d at 905, 908) ("*White* clarifies that it is the inadequacy of the 'evidence' received from the physician rather than the inadequacy of the record as a whole, or the rejection of the physician's opinion, that gives rise to the duty to recontact a treating physician."). Thus, the duty to re-contact a treating physician arises where the medical evidence from the physician is inadequate but not where the physician's opinion is rejected for valid reasons.

In *Stokes v. Astrue*, 274 F. App'x 675 (10th Cir. 2008), an unpublished opinion, the Tenth Circuit considered a situation similar to that presented by Moss. There, the treating physician provided a one-sentence opinion stating that the plaintiff "suffers from chronic low back [sic] and would not be able to work full time on a regular basis." *Id.* at 687 (alteration in original). The ALJ found that this opinion could not "be given controlling weight because it is brief and conclusory with nothing in the way of clinical findings to support his conclusion." *Id.* The plaintiff argued that the ALJ erred in failing to give the opinion controlling weight and failing to re-contact the physician to obtain a more detailed opinion. *Id.* at 687-88. The Tenth Circuit first held that the single sentence

16

from the treating physician was not a medical opinion because it merely stated a diagnosis and a

legal conclusion. *Id.* (citing 20 C.F.R. §§ 404.1527(e), 416.927(e)). As to the duty to re-contact, the

Tenth Circuit found that, because the administrative record contained the medical records from the

clinic that the plaintiff attended as well as the records from the other treating physicians, the ALJ

did not err in failing to re-contact the doctor. *Id.* at 688.

While *Stokes* is an unpublished decision, the similarity of the circumstances renders it

extremely persuasive in this case. Though the ALJ here was less eloquent and clear, it is obvious

that he did not find the August 2, 2007 return to work recommendation controlling. By stating that

"[t]he doctor apparently relied quite heavily on the subjective report . . . provided by the claimant

. . ." (AR 15), he indicated that the doctor had not supported his recommendation with objective

findings. Additionally, it is clear from the medical records by Dr. Prickett that he did rely heavily

on Moss' subjective assessments of pain during physical examinations. By noting that "it is not clear

that the doctor was familiar with the definition of 'disability' contained in the Social Security Act

. . .", it is obvious that the ALJ identified that the doctor had drawn the legal conclusion that is

reserved for the Commissioner. As in *Stokes*, the doctor on this form identified Moss' diagnoses,

checked "[h]e/she is totally incapacitated at this time", and wrote in "Disabled." (AR 295.) This is

not a medical opinion. Furthermore, the record contains all of Moss' medical records for two years,

including his records from his two treating physicians at Rehabilitation and Occupational Medicine,

Dr. Prickett and Dr. Delahoussaye. The evidence from Dr. Prickett and Rehabilitation and

Occupational Medicine was in no way inadequate. The ALJ's decision to reject Dr. Prickett's return

to work recommendation because it was not a medical opinion and was conclusory did not trigger

a duty to re-contact the doctor. *See also Gutierrez v. Astrue*, 253 F. App'x 725, 729 (10th Cir. 2007)

(unpublished) (citation omitted) ("[T]he decision regarding disability is reserved to the

Commissioner, . . . and the fact that Dr. Cummings had a different opinion than the ALJ is not the type of evidentiary conflict or ambiguity that required further contact.").

Moss relies on the case of *Robinson v. Barnhart*, 366 F.3d 1078 (10th Cir. 2004), to argue that his claim is meritorious. (Doc. 17 at 13-14.) However, in that case, the issue before the court was the failure to accord the opinion of a treating physician controlling weight. *Robinson*, 366 F.3d at 1080. Furthermore, the treating physician there completed "an assessment of claimant's mental ability to do work-related activities . . ." that described her specific capabilities in functional areas. *Id.* at 1081. The only part of the court's analysis in *Robinson* that is helpful to the issue here is the statement that "the ALJ's statement that Dr. Baca's records did not give a reason for his opinion that claimant is unable to work triggered the ALJ's duty to seek further development of the record before rejecting the opinion." *Id.* at 1084. As described above, the August 2007 recommendation was not a medical opinion and was conclusory. The information from the treating physician and included in the administrative record was not inadequate, and so the ALJ did not err in failing to re-contact Dr. Prickett.

### RECOMMENDATION

For the foregoing reasons, it is recommended that the Plaintiff's motion (Doc. 16) be

DENIED and that the decision of the Commissioner be AFFIRMED.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

---

William P. Lynch
United States Magistrate Judge